# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SCOTT M. WASELIK,** | **Civil Action No. 16-4969 (KM)** |
| **Plaintiff,** | **REPORT AND RECOMMENDATION** |
| **v.** | |
| **TOWNSHIP OF SPARTA, et al.,** | |
| **Defendants.** | |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Defendants Township of Sparta (the "Township"), Chief Ernest I. Reigstad, Daniel Elig, Kurt Morris, Sergeant Keith Hannam, Sergeant Terrence Mulligan, Sergeant Joseph Pensado and Sergeant John Paul Beebe (collectively "Defendants") seeking to enforce a settlement [Dkt. No. 49], which is opposed by Plaintiff Scott M. Waselik ("Plaintiff") [Dkt. No. 52] and a cross-motion by Plaintiff also seeking to enforce a settlement [Dkt. No. 50], which is opposed by Defendants [Dkt. No. 51]. For the reasons set forth below, it is respectfully recommended that Defendants' motion to enforce a settlement [Dkt. No. 49] be **DENIED** and that Plaintiff's cross-motion to enforce a settlement [Dkt. No. 50] be **DENIED**.

## I.    BACKGROUND

Plaintiff's claims in this matter arise out of an incident on October 8, 2013 during which Plaintiff was stabbed and beaten in his residence by an individual identified as Kevin Rios. Following the attack, Plaintiff was driven by a friend to the Sparta Police Department where he reported the incident as a domestic violence matter. Plaintiff was then transported to Morris County Memorial Hospital where he was admitted and treated for his injuries. After receiving Plaintiff's

report of the incident, Sparta Police Officers Daniel Elig and Kurt Morris went to Plaintiff's residence, where they located Rios in the back yard and handcuffed and arrested him. Although Plaintiff was in the hospital and Rios, the sole suspect, was in custody, Elig and Morris entered Plaintiff's residence without a warrant and observed marijuana. On October 9, 2013, Sparta police officers obtained a search warrant and re-entered Plaintiff's residence where they seized marijuana and associated paraphernalia.

On October 24, 2013, Plaintiff turned himself in to the Sparta police and was charged by summons and complaint with possession of a controlled dangerous substance and drug paraphernalia. According to Plaintiff, at the time he was charged, the police knew or had reason to know that Plaintiff was entitled to possess marijuana for medical reasons because his medical marijuana card was in his wallet which had remained at the police station from the time he reported the incident until he was released from the hospital on October 13, 2013. On November 7, 2014, the Hon. Thomas J. Critchley, J.S.C., entered an order granting Plaintiff's motion to suppress the evidence seized from his residence. On January 15, 2015, the charges against Plaintiff were dismissed.

Plaintiff filed his initial Complaint in this matter on August 12, 2016 asserting various claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act. *See* Dkt. No. 1. Defendants filed a motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which the Court subsequently granted in part and denied in part. *See* Dkt. No. 17. Plaintiff then, in response to the Court's Opinion and Order, filed an Amended Complaint, which asserts three causes of action under 42 U.S.C. § 1983. *See* Dkt. No. 18.

The present motion arises out of a disagreement between Plaintiff and Defendants regarding the terms of a settlement reached by the parties as a result of a settlement conference

held by the Court on October 9, 2018. At the conclusion of the settlement conference, the parties

requested that the settlement terms be memorialized by the Court on the record. The Court granted

the parties' request and placed the terms of the settlement and the parties' statements of assent to

such terms on the record. *See* Dkt. No. 40. The parties agreed, and continue to agree, that the

settlement they reached would include Plaintiff's dismissal of all claims in this matter in exchange

for the payment of $37,500, with $25,000 to be paid upon full execution of a settlement agreement

and the remaining $12,500 to be paid six months later in the absence of any breach of the settlement

agreement in the interim. *Id.* at p. 3-4. The Court noted that the settlement would be contingent

upon final approval by the Township's town council.

The parties' present dispute relates to the confidentiality of the settlement. Specifically, the

parties disagree as to whether Plaintiff's counsel, Tracey C. Hinson, Esq. of Hinson Snipes LLP

("Hinson Snipes") was to be bound by the confidentiality provision. The confidentiality of the

settlement was briefly addressed by the parties during the October 9, 2018 proceeding. After

outlining the amount and timing of the settlement payments, the attorney for the Township, Steven

K. Parness, Esq. of Methfessel & Werbel stated:

> The Town[ship], though, wants to make very clear that a key
> provision of this agreement is the confidentiality provision. The
> Township wants to keep this settlement agreement confidential. And
> we're hoping that all parties abide by that.

Dkt. No. 40 at 6:15-19. Ms. Hinson did not immediately react or respond to Mr. Parness' statement.

However, at the conclusion of the proceeding, the following exchange took place between Ms.

Hinson and the Court:

> Ms. Hinson: Your Honor, may I clarify something?
>
> The Court: Sure.

3

> Ms. Hinson: So generally with confidentiality, not that I plan on speaking about this case every day, but just to be clear, that the confidentiality – between the Township and my client.
>
> The Court: Correct.
>
> Ms. Hinson: All right. Thank you.

*Id.* at 8:9-16. The proceeding concluded shortly thereafter with no further discussions relating to the issue of confidentiality.

On December 6, 2018, Defendant submitted a letter advising the Court that the parties had reached an impasse concerning the terms of the settlement agreement. *See* Dkt. No. 35. Specifically, Defendants sought to include a confidentiality provision in the written settlement agreement which would bind Ms. Hinson and Hinson Snipes along with Plaintiff. Ms. Hinson, however, stating her intention to publicize the parties' settlement on the Hinson Snipes website, objected to any confidentiality clause which would prevent her from speaking publicly about the settlement. After multiple unsuccessful attempts to resolve the parties' dispute, the Court directed the parties to file the present motions.

## II.   LEGAL STANDARD

The law governing the enforcement of a settlement agreement holds that a settlement agreement between parties to a lawsuit is a contract like any other contract. *Peskin v. Peskin*, 638 A.2d 849, 857 (N.J. Super. Ct. App. Div. 1994) (citing *Nolan v. Lee Ho*, 577 A.2d 143, 146 (N.J. 1990)). A contract is formed where there is offer and acceptance and terms sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty. *U.S. v. Lightman*, 988 F. Supp. 448, 458 (D.N.J. 1997) (citing *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435, 608 A.2d 280 (1992)). That contract is enforceable if the parties agree on essential terms and manifest an intention to be bound by those terms. *Id.* Where the parties do not agree on one or more essential terms, however, courts generally hold that the agreement is

4

unenforceable. *Id.* Determining whether a term is essential "depends on the agreement and its context and also on the subsequent conduct of the parties . . . ." *JM Agency, Inc. v. NAS Fin. Servs., Inc.,* No. L–1541–05, 2007 WL 2215393, at *3 (N.J. Super. Ct. App. Div. Aug. 3, 2007) (citing Restatement (Second) of Contracts § 131, cmt. g (1981)).

A settlement agreement need not be reduced to writing to be binding. *Vandergrift v. Pennsauken School District,* 2017 WL 6566139, at *4 (D.N.J. 2017). "So long as the basic essentials are sufficiently definite, any gap left by the parties should not frustrate their intent to be bound." *Id.* (citing *Hagrish v. Olson,* 254 N.J. Super. 133, 138, 603 A.2d 108 (App. Div. 1992) (citation and quotation omitted)). "Where the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges." *Lahue v. Pio Costa,* 263 N.J. Super. 575, 596 (App. Div.) (quoting *Bistricer v. Bistricer,* 231 N.J. Super. 143, 145 (Ch. Div. 1987)), *certif. denied,* 134 N.J. 477 (1993). The addition of terms to effectuate the settlement that do not alter the basic agreement will not operate to avoid enforcement of an agreement to settle a litigated matter. *Bistricer,* 231 N.J. Super. at 148, 151.

The party seeking to enforce the alleged settlement agreement has the burden of proving the existence of the agreement under contract law. *Lightman,* 988 F. Supp. at 458 (citations omitted). Courts treat a motion to enforce a settlement under the same standard as a motion for summary judgment because the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement. *Washington v. Klem,* 388 F. App'x 84, 85 (3d Cir. 2010) (citing *Tiernan v. Devoe,* 923 F.2d 1024, 1031 (3d Cir. 1991)).

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted). The same standards apply when addressing cross-motions for summary judgment. *See Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). If upon review of cross-motions, the court finds "no genuine dispute over material facts," then judgment may be entered "in favor of the party deserving judgment in light of the law and undisputed facts." *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998).

## III.    DISCUSSION

The parties' present dispute relates solely to the issue of whether Ms. Hinson and Hinson Snipes are to be included in the confidentiality provision in the parties' written settlement agreement.[1] In their present motion, Defendants contend that the parties' agreement to settle this matter included an agreement that the settlement would remain confidential. Although Defendants acknowledge that the inclusion of the parties' respective counsel in the agreed upon confidentiality provision was never specifically addressed, Defendants allege that all parties understood that

---

[1] The Court notes that although Plaintiff refers to specific paragraphs in the parties' draft written settlement agreement to which he objects, neither party has provided the Court with the written agreement nor any specific language therein. Accordingly, this Report and Recommendation addresses only the general question of whether the parties reached an enforceable settlement, and if so, whether that settlement included an agreement to confidentiality by Hinson Snipes. The Court makes no ruling as to the propriety of any specific language which the parties have included or seek to include in any forthcoming written agreement.

counsel would be bound by the same confidentiality as the parties themselves because "otherwise the confidentiality clause would be rendered meaningless . . . ." Dkt. No. 49 at p. 1. According to Defendants, because they believed from the outset that Plaintiff intended to publicize any settlement reached, confidentiality was "the key component of the settlement, and the primary consideration which Defendants received from the agreement . . . ." *Id.* at p. 3. In fact, Defendants claim that the two-payment structure of the settlement, with a portion of the settlement proceeds to be paid upon the parties' execution of a written agreement, and the remainder to be paid six months later in the absence of any breach of the agreement by Plaintiff, was "specifically designed to ensure that Plaintiff" did not publicize the settlement. *Id.* Accordingly, Defendants seek to enforce the parties' settlement, which is to include, among other agreed upon terms, a confidentiality clause which applies to Plaintiff and his counsel.

Conversely, in Plaintiff's cross-motion, Plaintiff claims Ms. Hinson clearly stated during the settlement negotiations, and confirmed on the record during the October 9, 2018 proceeding before the Court, that any confidentiality provision in the settlement agreement would bind neither Ms. Hinson as an individual nor Hinson Snipes. Additionally, although Plaintiff acknowledges that Defendants' agreement to enter into the settlement was conditioned upon Plaintiff's consent to confidentiality, Plaintiff now contends that any confidentiality clause agreed upon by the parties would be unenforceable as a matter of public policy due to the Township's public-entity status. Finally, Plaintiff argues that subjecting Ms. Hinson to a confidentiality clause would impermissibly restrict the right of Hinson Snipes to practice law.

As an initial matter, the Court addresses Plaintiff's contentions regarding the unenforceability of any prospective confidentiality clause in the settlement agreement. First, as to Plaintiff's claim that a confidentiality provision would be unenforceable as a matter of public

policy because it involves the Township, Plaintiff is indeed correct that New Jersey's Open Public Records Act ("OPRA") requires the disclosure of "government records," which includes "agreements settling claims between claimants and governmental entities" such as the Township. *Burnett v. Cty. of Gloucester*, 415 N.J. Super. 506, 512 (App. Div. 2010). Accordingly, even where such an agreement contains a confidentiality provision, it will be subject to disclosure under OPRA as a government record. *Id.* (citing *Asbury Park Press v. Cty. of Monmouth*, 406 N.J. Super. 1 (App. Div. 2009), *aff'd,* 201 N.J. 5, 986 A.2d 678 (2010)).

Although the Court agrees with Plaintiff that even if the parties' written settlement agreement were to include a confidentiality provision it would not be exempt from disclosure pursuant to a request under OPRA, Plaintiff's assertion that "a public entity cannot enter into a voluntary agreement at the end of a public lawsuit to keep a settlement confidential" misstates the applicable law. Dkt. No. 50 at p. 7. Contrary to Plaintiff's contention, while a governmental entity cannot shield a settlement agreement from disclosure under OPRA, there is no prohibition on the addition of a confidentiality clause to such an agreement and any parties thereto  "will still be bound to keep information confidential pursuant to a negotiated agreement even if that information is later disclosed under OPRA." *New Jersey Intergovernmental Ins. Fund v. Selecky*, No. A-1292-15T1, 2017 WL 2953055, at *3 (N.J. Super. Ct. App. Div. July 11, 2017) (citing *Asbury Park Press*, 406 N.J. Super. at 9).

The Court is similarly unconvinced by Plaintiff's assertion that preventing Ms. Hinson and Hinson Snipes from speaking publicly about the settlement reached in this matter through their inclusion in the confidentiality clause represents "Defendants' clear attempt to place limitations on Hinson Snipes' right to practice law or restrict its right to represent other clients . . . ." Dkt. No. 50 at p. 9. According to Plaintiff, the inclusion of Hinson Snipes in the confidentiality clause would

violate New Jersey Rule of Professional Conduct 5.6 which prevents a lawyer from "offering or making . . . an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties." RPC 5.6(b). Plaintiff claims that a confidentiality provision preventing Hinson Snipes from publicizing the parties' settlement would restrict its ability to represent future clients by making it more difficult for Hinson Snipes to advertise or market its services to prospective clients. The Court finds Plaintiff's arguments in this regard to be unavailing. Precluding Hinson Snipes from publicizing the specifics of the parties' settlement on its website in furtherance of its marketing strategy is far from equivalent to restricting Hinson Snipes' ability to represent future clients or otherwise practice law.

Having dispensed with Plaintiff's arguments in support of his contention that any confidentiality clause would be unenforceable as a matter of a law, the Court now turns to the question of whether the parties reached an enforceable agreement to settle this matter. Because confidentiality is the disputed term at issue, the Court must first determine whether confidentiality is a material term of the parties' settlement.

In determining the materiality of any disputed terms in a settlement agreement, the Court looks to "the context and the parties' view of what is important . . . ." *JM Agency, Inc.*, 2007 WL 2215393, at *4. Defendants' central and unambiguous motivation for agreeing to a settlement was the desire to prevent Plaintiff from speaking publicly about this case and Defendants have repeatedly stated that an agreement by Plaintiff to refrain from speaking publicly about this matter would be an essential element of any settlement reached. Plaintiff likewise explicitly acknowledges that during the settlement conference, Mr. Parness "explained that [the Township] was concerned with confidentiality due to prior publicity surrounding the case and prior statements made to the media" and "made it clear [that] [the Township] would not settle this case unless

Plaintiff voluntarily agreed to enter into [a] [c]onfidentiality agreement." Dkt. No. 50 at p. 5. In light of the parties' prior statements in this matter and apparent agreement that confidentiality was of great importance to Defendants, it is clear to the Court that confidentiality was, and remains, a material term of the settlement to which the parties agreed.

Having found that confidentiality is an essential term of the parties' settlement, the Court must now determine whether the parties reached an agreement on the issue of confidentiality. Unfortunately, because it is apparent that there was never a meeting of the minds between the parties regarding the scope of confidentiality, the Court must answer this question in the negative. Defendants unequivocally conveyed to the Court and to Plaintiff and his counsel that their consent to the terms of the settlement was contingent upon the execution of a confidentiality clause which would prevent any further public statements regarding this matter. Although Defendants did not explicitly state on the record during the October 9, 2018 proceeding that they intended for Plaintiff's counsel to be specifically included in the confidentiality provision, it is clear that Defendants believed that the agreed upon confidentiality would prevent any public statements regarding the settlement, including any statements by Hinson Snipes.

The Court's finding in this respect is unchanged by Ms. Hinson's vague statement to the Court at the conclusion of the October 9, 2018 proceeding that "generally with confidentiality, not that I plan on speaking about this case every day, but just to be clear, that the confidentiality – between the Township and my client." Dkt. No. 40 at 8:11-14. According to Plaintiff, the foregoing statement by Ms. Hinson represents an explicit indication that confidentiality would not bind Hinson Snipes and the transcript of the October 9, 2018 proceeding, Plaintiff contends, "includes the Court's acknowledgement that the settlement agreement does not bind" Ms. Hinson or Hinson Snipes. Dkt. No. 52 at p. 4. The Court disagrees. Ms. Hinson's statement was at best imprecise

and it is evident from the lack of reaction by Defendants and the Court that neither Defendants nor the Court understood Ms. Hinson's statement to mean that Hinson Snipes intended to actively publicize the settlement.

A review of the record of this matter, including the October 9, 2018 proceeding before this Court, demonstrates that Defendants always intended for the settlement agreement to prevent any further public statements by the parties regarding this case, including by counsel, and that Plaintiff's counsel never intended to comply with such a restriction. Therefore, the Court finds that there was never a meeting of the minds on the issue of confidentiality. Accordingly, because confidentiality is a material term of the parties' settlement, the Court find that no enforceable agreement between the parties to settle this matter exists.

Based on the foregoing, it is respectfully recommended that the Court find that the parties never reached an enforceable agreement to settle this matter and that Defendants' motion to enforce a settlement [Dkt. No. 49] and Plaintiff's cross-motion to enforce a settlement [Dkt. No. 50] be **DENIED**.

## IV.    CONCLUSION AND ORDER

In light of the foregoing, and the Court having considered this matter pursuant to Federal Rule of Civil Procedure 78;

**IT IS** on this 30th day of October, 2019,

**RECOMMENDED** that Defendants' motion to enforce a settlement [Dkt. No. 49] be **DENIED**; and it is further

**RECOMMENDED** that Plaintiff's cross-motion to enforce a settlement [Dkt. No. 50] be **DENIED**; and it is further

**ORDERED** that pursuant to L. Civ. R. 72.1 and Fed. R. Civ. P. 72, objections to this Report and Recommendation shall be filed within fourteen (14) days after service hereof. Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

 s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**
